◼ In the Matter of 12 CORNELIA STREET, INC., Appellant. PHILIP ROSS, as Industrial Commissioner, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 31, 1980, which reversed the decision of a referee and sustained the initial determination of the Industrial Commissioner assessing the employer the sum of $2,976.49 as contributions due for the audit period from January 1, 1976 through June 30, 1978. Decision affirmed, without costs. No opinion. Sweeney, J. P., Kane and Herlihy, JJ., concur.

Main and Mikoll, JJ., dissent and vote to reverse in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. The appellant corporation is engaged in the real estate business and as part of this endeavor engages real estate salesmen. The board held that the salesmen are employees of the corporation. At issue then is the question of whether the record supports such finding by substantial evidence. The board based its decision in part on an administrative regulation (19 NYCRR 175.21) implementing section 441 of the Real Property Law which it concluded required substantial supervision and control to be exercised by the broker corporation so as to negate any independent contractor status of the real estate agents associated with it. This conclusion is erroneous and has been repudiated by this court (see *Matter of McCabe & Willig Realty [Ross],* 80 AD2d 935). The record also fails to support the board's finding that salesmen had to spend designated time in the office. This finding is in direct conflict with the unrefuted testimony in the record that time schedules were set by the salespeo-

ple themselves on a voluntary basis and that the employer took no part in setting up such schedule and did not require salespeople to be in attendance at the office. The board also attached significance, in determining the nature of the relationship, to the fact that the agents were covered by workers' compensation insurance. No great significance can be attributed to this circumstance in view of the fact that this insurance coverage was paid for by the agents and was consented to by the corporation under duress from its insurance carrier. Additional significant facts in the record indicate that during the audit period the staff fluctuated from 8 to 12 salesmen, 8 of whom were also brokers; 8 desks were provided by the corporation for the sales staff; agents generally did their own typing of sales contracts and paid for all their own business expenses except for the initial supply of business cards which was supplied to them by the corporation; there was no prescribed training period for them supervised by the employer but educational reading material and films were made available to the agents which they were free to use at their convenience and wherever they chose; they could work from the office or from any other location; they could fix their own prices on property by reducing their fee; the corporation did not reserve any authority to itself to approve sales; sales meetings were held but attendance at these was not mandatory; agents developed the majority of their own sales leads and the corporation gave out sales leads it developed on a rotating basis; no taxes or deductions were taken from sales commissions; the agents filed unincorporated business tax forms and, finally, agents took their vacation time at their own convenience and without prior approval from the corporation. The factual pattern here is strikingly similar to those encountered in recent cases (see, e.g., *Matter of McCabe & Willig Realty [Ross], supra; Matter of Van Waes & Assoc. Realty [Ross],* 76 AD2d 1016; *Matter of Barrett [Stovroff & Herman — Ross],* 56 AD2d 688), all of which held that the facts failed to establish that the principal exercised such control over the sales agents so as to constitute an employer-employee relationship. The decision of the board should be reversed.